[Cite as *Ross v. Johnson*, 2019-Ohio-2849.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| LAURA J. ROSS | C.A. No.    18CA011282 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TRACEY L. JOHNSON, ET AL. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | CASE No.    16CV188444 |

DECISION AND JOURNAL ENTRY

Dated: July 15, 2019

CARR, Judge.

{¶1}   Appellant, Laura Ross, appeals the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}   This matter arises out of a physical altercation that occurred at Pudge's Place & Patio ("Pudge's Place"), a bar in Elyria, Ohio.  On January 19, 2015, Ross and Shelly Johns entered Pudge's Place and proceeded to order drinks.  Ross and Johns were served their beers by Tracey Johnson, the bartender working that afternoon.  A short time later, Ross and Johns got into a heated argument with Johnson about Johnson's boyfriend.  During the argument, Ross pushed Johnson and made physical contact several other times.  Johnson directed Ross and Johns to leave the bar but the women refused to leave.  Johnson placed a telephone call to Ginger Sherrill and requested that Sherrill come to the bar to help resolve the situation.  Ross went behind the bar and reached for the phone.  At one point, Ross struck Johnson in the face.  In

return, Johnson swung and struck Ross in the eye with a beer glass that she was holding in her hand. The beer glass shattered. Ross suffered very serious injuries. The incident was captured by a video surveillance system.

{¶3}    On January 14, 2016, Ross filed a complaint against Johnson, Pudge's Place, Inc., TMD Investments of Elyria, LLC. ("TMD"), and Sherrill. Ross asserted claims of battery and negligence, as well as theories of vicarious liability. Johnson did not file an answer to the complaint. Pudge's Place filed an answer generally denying the allegations in the complaint. Sherrill and TMD filed an answer along with counterclaims against Ross for frivolous conduct and abuse of process.

{¶4}    Thereafter, Pudge's Place, Inc., TMD, and Sherrill filed a motion for summary judgment on the claims in the complaint. Ross filed a brief in opposition to the motion for summary judgment. Pudge's Place, Inc., TMD, and Sherrill filed a reply brief in support of the motion. On January 10, 2017, the trial court issued a decision granting the motion for summary judgment in regard to TMD and Sherrill on the grounds that there was no basis for liability to be imposed upon those defendants. The trial court denied the motion for summary judgment as it pertained to Pudge's Place, Inc.

{¶5}    After the trial court issued its summary judgment order, TMD and Sherrill dismissed their counterclaims without prejudice. Ross successfully moved for default judgment against Johnson. Pudge's Place, Inc. confessed that it was vicariously liable for Johnson's actions. Pudge's Place consented to a judgment against it in the amount of $330,000.

{¶6}    On appeal, Ross raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE LOWER COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENTS FOR THE APPELLEES GINGER A SHERRILL AND TMD INVESTMENTS OF ELYRIA, LLC.

{¶7}  In her sole assignment of error, Ross contends that the trial court erred in awarding summary judgment to TMD and Sherrill. This Court disagrees.

{¶8}  This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶9}  Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10}  The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or

denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

## Background

{¶11} In her complaint, Ross alleged that she was battered by Johnson who, at all relevant times, was an "agent and/or employee" of Sherrill, TMD, and Pudge's Place, Inc. Ross alleged that Sherrill, TMD, and Pudge's Place, Inc. authorized and ratified the battery. Ross further alleged that Sherrill, TMD, and Pudge's Place, Inc. were negligent in their failure to exercise reasonable care to control Johnson, who was acting within the scope of her employment when she struck Ross.

{¶12} On November 14, 2016, Sherrill and TMD filed a motion for summary judgment that was supported by multiple exhibits, including an affidavit from Sherrill and a copy of a purchase agreement for the bar in question. Sherrill and TMD maintained that while Ross was initially an invitee at Pudge's Place, she became a trespasser when she was asked to leave and refused to do so. The movants further stressed that it was Ross who played the role of the aggressor during the incident. With respect to vicarious liability, Sherrill and TMD presented evidence that on the date of the incident, January 19, 2015, Johnson was not employed by either Sherrill or TMD. Instead, Johnson was an employee of Pudge's Place, Inc., the entity that owned the bar. TMD and Pudge's Place, Inc. subsequently executed a purchase agreement on January 21, 2015, whereby TMD, and its sole member, Sherrill, bought the business. Sherrill and TMD maintained that TMD was not liable because it had not yet become owner of the bar at the time the incident occurred and it had no control over Johnson. Sherrill and TMD further

maintained that there was no basis for liability against Sherrill, as the sole member of TMD, because TMD had not yet taken possession of the business at the time of the incident.

{¶13} In responding to the motion, Ross maintained that Johnson was employed by Pudge's Place, Inc., Sherrill, and TMD because Sherrill was effectively running the bar at the time of the incident. Ross submitted numerous exhibits in support of her position, including a number of depositions. Sherrill's father, George Diederich, was the sole owner of Pudge's Place, Inc. Though she did not own any shares, Sherrill served as vice president of Pudge's Place, Inc., until she resigned on January 16, 2015, three days before the incident. In the years preceding the incident, Diederich was incarcerated for a period of time. After his release from prison in 2014, Diederich did not actively resume his duties at the bar. During Diederich's absence, Sherrill managed many of the day-to-day operations. As compensation, Sherrill paid herself cash from the proceeds of the business. Sherrill hired Johnson as a bartender. Johnson, in her deposition, indicated that she considered Sherrill to be her "immediate superior" at the time of the incident. Johnson stated that she called Sherrill as the incident was unfolding because she "needed help." At the time Johnson made the call, Sherrill was in a meeting with the owner of the vending machines at the bar arranging for those machines to be used by TMD. TMD did not become the owner of Pudge's Place until January 21, 2015, when TMD purchased Pudge's Place, Inc. Prior to the incident, the bartenders at Pudge's Place knew that Sherrill would be taking over the bar.

{¶14} On January 10, 2017, the trial court issued its order granting summary judgment in favor of TMD and Sherrill. At the outset of its analysis, the trial court noted that all of Ross's claims were predicated on the notion that Johnson committed a tort. While the trial court acknowledged that Ross was a trespasser who acted as the aggressor during the incident, it ultimately determined that the question of whether Johnson responded with reasonable force

during the altercation should be left to a jury. The trial court also concluded that there was a question of fact regarding whether Johnson was acting within the scope of her employment when she struck Ross. With respect to TMD and Sherrill, the trial court determined that "[t]he uncontroverted facts in this matter establish that [TMD] did not come into possession of the bar until January 21, 2015, two days after the incident giving rise to [Ross's] claims[.]" Though Ross argued that Sherrill was still managing the bar and that TMD could be held liable under the doctrines of respondeat superior and the loaned servant, the trial court stressed that the determinative issue was identifying the party for whom the servant was acting at the time they committed the tort. The trial court concluded that in this case, Johnson was the servant of Pudge's Place, Inc., and there was no evidence that she was under the control of TMD or Sherrill at the time of the incident. While Sherrill had served as a supervisor at the bar, she did so for the benefit of Pudge's Place, Inc., not TMD. The trial court further noted that there was no basis for personal liability against Sherrill because there was no evidence that she was anything other than an employee of Pudge's Place, Inc. at the time of the incident.

## Discussion

{¶15} On appeal, Ross maintains that the trial court erred in granting summary judgment because TMD and Sherrill could be held liable under the doctrines of respondeat superior. Ross asserts that Johnson was employed by Pudge's Place, Inc., Sherrill, and TMD at the time of the incident. Ross contends that there is a question of fact regarding whether Johnson was under Sherrill's control at the time of the incident, given that her father, George Diederich, had stepped away from the day to day operations of Pudge's Place, Inc. Ross further contends that Johnson should be considered a loaned servant for liability purposes because Pudge's Place, Inc. loaned Johnson's services to TMD and Sherrill.

**{¶16}** "Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior[.]" (Italics omitted.) *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438 (1994). "[I]n order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment." *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (1991). "Moreover, where the tort is intentional, as in the case at bar, the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.'" *Id.* quoting *Little Miami R.R. Co. v. Wetmore*, 19 Ohio St. 110, 132 (1869).

**{¶17}** Under the loaned servant doctrine, when one party lends an employee to another party for a particular service, the loaned employee becomes the employee of the party to whom his services have been loaned, although the employee remains in the general employ of that party that loaned him. *Ragone v. Vitali & Beltrami, Jr., Inc.*, 42 Ohio St.2d 161, 171 (1975). "Though the employee remains the general servant of the party who has loaned him, '[s]ince the question of liability is always predicated upon some specific act of the servant, it is not important whether he remains the servant of the general employer as to matters generally, but whether, in performing the act in question, he is acting in the business of and under the direction of the general employer or that of the temporary employer.'" *Medina v. Harold J. Becker Co., Inc.*, 163 Ohio App.3d 832, 2005-Ohio-5438, ¶ 57 (1st Dist.), quoting *Halkias v. Wilkoff Co.*, 141 Ohio St. 139, 152-153 (1943).

**{¶18}** The crux of Ross's argument is that in addition to working for Pudge's Place Inc., Johnson was under the control of TMD and Sherrill because they were also her employers at the time she struck Ross with the beer glass.

**{¶19}** A review of the summary judgment evidence reveals that Ross's argument is without merit as TMD and Sherrill were not Johnson's employers at the time of the incident. It is undisputed that TMD, and Sherrill as its sole member, did not purchase the bar from Pudge's Place, Inc. until January 21, 2015, two days after the incident. It is further undisputed that Sherrill resigned her position as vice president of Pudge's Place, Inc. on January 16, 2015, three days prior to the incident.[1] Though Sherrill had assumed managerial responsibilities during her tenure as an employee of Pudge's Place, she was neither Johnson's general employer at the time of the incident, nor was she Johnson's temporary employer for the purposes of the loaned servant doctrine. Sherrill was, at most, continuing to serve as an employee for Pudge's Place, Inc. at the time the incident occurred. While Ross emphasizes that Johnson was on the phone with Sherrill during the altercation, Sherrill had already resigned her position as vice president of Pudge's Place, Inc. at that time and she had not yet executed the purchase agreement to buy the bar as the sole member of TMD. Under these circumstances, the trial court did not err in concluding that TMD and Sherrill were entitled to summary judgment.

**{¶20}** Ross's assignment of error is overruled.

### III.

**{¶21}** Ross' assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

[1] The trial court acknowledged that Sherrill resigned her position as vice president of Pudge's Place, Inc., on January 16, 2015. While the trial court subsequently stated that Sherrill was acting as an "employee/manager" at the time of the incident, it is apparent from the trial court's entry that it used this terminology simply to draw a contrast from acting as an "employer/owner."

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

HENSAL, J.
TEODOSIO, P.J.
CONCUR.

APPEARANCES:

MARK E. STEPHENSON, Attorney at Law, for Appellant.

MARK F. CRAIG, Attorney at Law, for Appellees.